THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SETH REYNOLDS,

    Plaintiff,

  v.

SAFEWAY, INC., ALBERTSON'S LLC,
and ALBERTSONS COMPANIES, INC.,

    Defendants.

No. 2:22-cv-00197-TL

**MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM OR TO STRIKE CLASS ALLEGATIONS**

NOTE ON MOTION CALENDAR:
April 22, 2022
Oral Argument Requested

MOTION TO COMPEL OR DISMISS
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 2

    A.    Customers must accept Defendants' Terms of Use to purchase groceries online................................................................................................................. 2

    B.    After agreeing to the Terms of Use, Mr. Reynolds ignored his agreement to arbitrate individually by filing a putative class action in court......................... 4

    C.    Mr. Reynolds asserts claims based on his online purchase from Safeway, alleging he was overcharged by $12.80 for chicken sold by weight. .................... 5

III.    ARGUMENT ........................................................................................................... 7

    A.    Mr. Reynolds agreed to individual arbitration and cannot proceed in court on behalf of a putative class. ........................................................................... 8

        1.    Legal standard for compelling arbitration.................................................. 8

        2.    Mr. Reynolds accepted the Terms of Use and agreed to mandatory individual arbitration.................................................................................. 8

        3.    The parties delegated to the arbitrator questions about the scope of arbitration, leaving no other issue for the Court to decide....................... 11

        4.    Even if the parties had not delegated such questions, however, Mr. Reynolds's claims fall within the scope of the arbitration provision........ 13

    B.    Alternatively, the court should dismiss Mr. Reynolds's claims and strike his improper class allegations. .................................................................... 15

        1.    Legal standard for dismissing for failure to state a claim and for striking class allegations. ........................................................................ 15

        2.    Mr. Reynolds fails to allege facts giving rise to a plausible inference of a CPA claim................................................................................. 16

        3.    Mr. Reynolds fails to adequately plead a claim for fraudulent inducement.............................................................................................. 20

        4.    Mr. Reynolds fails to plead any facts to support a *respondeat superior* theory of liability. ..................................................................... 21

        5.    Alternatively, the Court should strike Mr. Reynolds's class allegations because he cannot serve as both class representative and class counsel.................................................................................... 23

IV.    CONCLUSION...................................................................................................... 24

MOTION TO COMPEL OR DISMISS  – ii
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

CASES

*Adams v. AT & T Mobility, LLC*,
  816 F. Supp. 2d 1077 (W.D. Wash. 2011)................................................................9

*Ambach v. French*,
  216 P.3d 405 (Wash. 2009)....................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662, 679 (2009) .......................................................................................16

*Bastida v. Nat'l Holdings Corp.*,
  No. C16-388RSL, 2016 WL 4250135 (W.D. Wash. Aug. 4, 2016)........................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................15, 16, 19

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ................................................................................12

*Bund v. Safeguard Props. LLC*,
  No. C16-920 MJP, 2018 WL 3917930 (W.D. Wash. Aug. 16, 2018)...............17, 20

*Chamberlain Grp., Inc. v. Nassimi*,
  No. C09-5438BHS, 2010 WL 4286192 (W.D. Wash. Oct. 25, 2010) ....................20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ..........................................................8, 11, 13, 14

*Church v. Expedia Inc.*,
  No. C18-1812JLR, 2019 WL 2422577 (W.D. Wash. June 10, 2019).......................9

*Cole v. Keystone RV Co.*,
  No. C18-5182 TSZ, 2021 WL 3111452 (W.D. Wash. July 22, 2021) ....................18

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)..................................................................................................8

*Diaz v. Nintendo of Am. Inc.*,
  No. C19-0116 TSZ, 2020 WL 996859 (W.D. Wash. Mar. 2, 2020) ......................12

*Esquer v. Educ. Mgmt. Corp.*,
  292 F. Supp. 3d 1005 (S.D. Cal. 2017)..................................................................12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009) ...........................................................................................7

*Gutierrez v. FriendFinder Networks Inc.*,
No. 18-cv-05918-BLF, 2019 WL 1974900 (N.D. Cal. May 3, 2019) .....................................8

*Hagstrom v. Safeway Inc.*,
No. C20-1160 RAJ-TLF, 2020 WL 6826736 (W.D. Wash. Nov. 20, 2020)..............21, 22, 23

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (Wash. 1986)........................................................................................17, 19

*Harbers v. Eddie Bauer, LLC*,
No. C19-0968JLR, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) ...................................10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
-- U.S. ---, 139 S. Ct. 524 (2019) ...................................................................................11

*Hodges v. Comcast Cable Communications, LLC*,
21 F.4th 535 (9th Cir. 2021) ......................................................................................14, 15

*In re Cal. Micro Devices Sec. Litig.*,
168 F.R.D. 257 (N.D. Cal. 1996).......................................................................................23

*In re Clorox Consumer Litig.*,
894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...........................................................................16, 23

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..............................................................................9

*In re Wyze Data Incident Litig.*,
No. C20-0282-JCC, 2020 WL 6202724 (W.D. Wash. Oct. 22, 2020) ....................9, 10, 11, 12

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ......................................................................................16, 17

*Lemberg v. LuLaRoe, LLC*,
No. ED CV 17-02102-AB (SHKx), 2018 WL 6927836 (C.D. Cal. Mar. 1,
2018) ..............................................................................................................................8

*McGill v. Citibank, N.A.*,
393 P.3d 85 (Cal. 2017) ...................................................................................................14

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) .........................................................................................13

MOTION TO COMPEL OR DISMISS  – iv
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Minton v. Ralston Purina Co.*,
  47 P.3d 556 (Wash. 2002)..................................................................................................22

*Missud v. Oakland Coliseum Joint Venture*,
  No. 1202967, 2013 WL 812428 (N.D. Cal. March 5, 2013).............................................23, 24

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ...........................................................................................8

*Panag v. Farmers Ins. Co. of Wash.*,
  204 P.3d 885 (Wash. 2009).................................................................................................19

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010)..........................................................................................................11, 12

*Robertson v. GMAC Mortg. LLC*,
  982 F. Supp. 2d 1202 (W.D. Wash. 2013)..........................................................................18

*Sato v. Century 21 Ocean Shores Real Estate*,
  681 P.2d 242 (Wash. 1984).................................................................................................19

*Schreiber v. Amazon.com, Inc.*,
  No. C08-896RSM, 2008 WL 4681909 (W.D. Wash. Oct. 20, 2008)....................................13

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) .............................................................................................13

*Smale v. Cellco P'ship*,
  547 F. Supp. 2d 1181 (W.D. Wash. 2008)..........................................................................18

*Sparling v. Hoffman Constr. Co.*,
  864 F.2d 635 (9th Cir. 1988) .............................................................................................11

*State v. Mandatory Poster Agency, Inc.*,
  398 P.3d 1271 (Wash. Ct. App. 2017).................................................................................17

*Susman v. Lincoln Am. Corp.*,
  561 F.2d 86 (7th Cir. 1977) ...............................................................................................23

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .........................................................................................16, 17

*Tandiama v. NovaStar Mortg., Inc.*,
  No. C03-909JLR, 2005 WL 1287996 (W.D. Wash. May 31, 2005)....................................21

*Trujillo v. Nw. Tr. Servs., Inc.*,
  355 P.3d 1100 (Wash. 2015)...............................................................................................17

MOTION TO COMPEL OR DISMISS  – v
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Turoff v. May Co.*,
    531 F.2d 1357 (6th Cir. 1976) ...............................................................................................23

*Vyas v. Wallach*,
    No. C06-1193RSM, 2006 WL 8454883 (W.D. Wash. Nov. 30, 2006)..................................21

*Weimin Chen v. Sierra Trading Post, Inc.*,
    No. 2:18-cv-1581-RAJ, 2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) ....................9, 11, 13

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) .................................................................................................16

*Williams v. Albertsons Companies LLC*,
    822 F. App'x 579 (9th Cir. 2020) ...........................................................................................22

*Woodell v. Expedia Inc.*,
    No. C19-0051JLR, 2019 WL 3287896 (W.D. Wash. July 22, 2019).....................................16

*World, L.L.C. v. Atlas Choice Corp.*,
    No. 1:15 CV 24, 2015 WL 2381624 (N.D. Ohio May 19, 2015) ............................................23

**STATUTES**

9 U.S.C. § 2......................................................................................................................................8

9 U.S.C. § 4......................................................................................................................................8

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................................................16

Fed. R. Civ. P. 12(b)(6)..................................................................................................................15

Fed. R. Civ. P. 12(f) .......................................................................................................................16

JAMS Streamlined R. 8(b)..............................................................................................................12

Wash. R. Prof'l Conduct 3.7...........................................................................................................23

MOTION TO COMPEL OR DISMISS  – vi
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## I.   INTRODUCTION

Plaintiff Seth Reynolds alleges that he purchased online three packs of chicken, received two at a different price than the estimate given online, and was overcharged by $12.80 for the chicken he received because the higher priced chicken pack was accidentally scanned twice. Safeway already refunded him more than four times that amount to address his complaint. Safeway also disclosed before his purchase that online prices for items sold by weight— including the chicken he bought—would be adjusted and would differ from the price actually charged. Despite that, Mr. Reynolds filed this putative nationwide class action with flimsy assertions about supposed deception; a cherry-picked quotation from Safeway's Online Ordering Policies, omitting that Safeway disclosed the price adjustments; claims against a company— Albertson's LLC ("Albertson's")—he never made a purchase from; and conclusory allegations about liability of the parent company, Albertsons Companies, Inc. ("ACI") (together with Safeway and Albertson's, "Defendants").

But Mr. Reynolds cannot proceed with those claims in this Court because (1) he agreed to mandatory individual arbitration, (2) he fails to state a plausible claim for relief, and (3) he improperly holds himself out as both class representative and class counsel.

*First*, the Court should dismiss Mr. Reynolds's claims and compel him to arbitrate the claims under the binding Terms of Use he accepted while placing his order. In fact, before purchasing his groceries, Mr. Reynolds received notice of the Terms of Use, had the opportunity to review them, and affirmatively agreed to them by selecting the "Place Order" button right below the statement that he had read and agreed to the Terms of Use. He did not reject the Terms of Use by declining to make the online purchase or buying groceries at a physical store. His claims do not belong in court and should be compelled to arbitration.

*Second*, arbitration provision aside, Mr. Reynolds's claims fail as a matter of law. He has not plausibly alleged fraud or deception, nor can he: Safeway informed customers that item prices and order totals given online are only *estimates*. No reasonable consumer who read

MOTION TO COMPEL OR DISMISS  – 1
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Safeway's Online Ordering Policies could be misled as Mr. Reynolds alleges. Nor do Mr. Reynolds's allegations support any reasonable inference other than a minor mistake that extended no farther than the transaction between Safeway and Mr. Reynolds. Mr. Reynolds further fails to allege any injury by Albertson's because he did not purchase any groceries from Albertson's under any policy of Albertson's. And finally, Mr. Reynolds has not alleged any facts to support liability against ACI. None of these claims can be cured through amendment because they are all based on the hopelessly flawed theory that a reasonable consumer would be misled by the word ***estimate***.

***Third***, Mr. Reynolds has created an impermissible conflict by serving a dual role as both class representative and class counsel. If the Court does not compel arbitration or dismiss for failure to state a claim, his class allegations should be stricken.

## II.   BACKGROUND

### A.   Customers must accept Defendants' Terms of Use to purchase groceries online.

Safeway offers customers the option to purchase groceries online at safeway.com. Declaration of Samarpit Mhatre in Support of Defendants' Motion to Compel or Dismiss ("Mhatre Decl.") ¶ 2. Groceries purchased online are fulfilled from local Safeway stores where employees pick the ordered items from store shelves and ring up and bag the items. *Id.* ¶ 3. Customers can pick up their online orders at a physical store or have their orders delivered to them. *Id.* ¶ 4.

On January 4, 2022, Mr. Reynolds placed an "order through Safeway's online delivery service." 2d Am. Compl. ("SAC"), ECF No. 19 (Mar. 3, 2022) ¶ 2.3. Safeway's online ordering service, like many similar consumer services, is governed by contractual terms of use (the "Terms of Use"). Mhatre Decl. ¶ 7; *see also id.* ¶ 8, Ex. A ("TOU").

To complete his online grocery order, Mr. Reynolds had to go through the Safeway checkout process. *Id.* ¶ 6. That process requires customers to enter their name, delivery address,

MOTION TO COMPEL OR DISMISS  – 2
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

email address, contact phone number, and payment details. *Id.* ¶ 9. After entering that information, customers must complete the ordering process by selecting the red "Place Order" button. *Id.* ¶¶ 10–11; *see also id.* ¶ 12, Ex. B. Immediately above that button, Safeway informs customers that "[b]y clicking 'Place Order', you acknowledge that you have read and agree to the Albertsons Companies' <u>Terms of Use</u> and <u>Privacy Policy</u> and that they apply to this order." *Id.* ¶ 12, Ex. B at 1.



*Id.*

The notice highlights "Terms of Use" in red and underlined type, distinguishing the phrase from other language around it. *Id.* The phrase "Terms of Use" is also hyperlinked so that customers can click on it and review the Terms of Use before deciding to place an order (and

MOTION TO COMPEL OR DISMISS – 3
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

from there, to make a purchase). *Id.* ¶ 14. If a customer selects the hyperlink, the Terms of Use are immediately displayed in full for a customer to review. *Id.* ¶ 15.

The Terms of Use state upfront that "[t]hese Terms of Use . . . apply to all Company banners' websites, online ordering services and mobile applications linking to or posting these Terms." TOU at 1. The Terms of Use also say that they are an agreement between the customer and "Albertsons Companies Inc." and "its affiliates/subsidiaries . . . including . . . Albertsons [and] Safeway." *Id.* The Terms of Use direct customers to "[p]lease read these Terms carefully" and inform customers that by "agree[ing]," they "indicate that [they] have read, understand, and agree to these Terms." *Id.* at 2. They also make explicit that customers can reject them by not using the online ordering service. *Id.* (stating that if customers "do not agree to these Terms . . . , please do not access or use the Sites").

The Terms of Use also notify customers at the beginning that customers will be required to individually arbitrate any disputes with Defendants:

> **[A]ny dispute or claim related to these Terms or arising out of your access to and/or use of any of our Sites must be resolved by arbitration on an individual basis, and may not be arbitrated or otherwise pursued as a class action.**

*Id.* That section also points customers to where in the Terms of Use they can review the specific arbitration agreement. *Id.*

To order groceries online, customers must agree to the Terms of Use by selecting the "Place Order" button. Mhatre Decl. ¶¶ 6, 13. A customer cannot order groceries online without doing so and affirmatively accepting the Terms of Use. *Id.* ¶ 16.

Customers can reject the Terms of Use, including the arbitration provision by not purchasing groceries online and instead purchasing groceries in person. *Id.* ¶ 17.

**B.  After agreeing to the Terms of Use, Mr. Reynolds ignored his agreement to arbitrate individually by filing a putative class action in court.**

When Mr. Reynolds placed an online order on January 4, 2022, he agreed to the Terms of Use and the arbitration provision, which both covered that order. SAC ¶ 2.3; TOU at 1.

MOTION TO COMPEL OR DISMISS – 4
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The arbitration provision in the Terms of Use requires individual arbitration of "all controversies, claims, counterclaims, or other disputes arising between you and Company relating to these Terms or arising out of your access to or use of any of the Sites," except for "cases involving claims for public injunctive relief (as defined by law)." TOU at 10. The provision states that the JAMS Streamlined Arbitration Rules & Procedures apply to arbitration. *Id.*

Instead of upholding his agreement to arbitrate, however, Mr. Reynolds initiated in state court this putative class action for claims related to his online grocery order.[1] Not. of Removal, ECF No. 1 (Feb. 18, 2022). And when confronted with the arbitration provision during the parties' meet and confer, Mr. Reynolds did not articulate a single reason why it should not apply—other than saying that he disagrees with Defendants' position. *See* Certificate of Conferral, *infra*.

C. **Mr. Reynolds asserts claims based on his online purchase from Safeway, alleging he was overcharged by $12.80 for chicken sold by weight.**

On January 4, 2022, Mr. Reynolds ordered three "Chicken Packs . . . at a price of $11.96 each or $2.99 per pound" online at safeway.com. SAC ¶ 2.4. When his order was delivered, he received two "Chicken Packs . . . charged at $16.16 each." *Id.* ¶¶ 2.5–2.6. He alleges he was overcharged by $12.80. *Id.* ¶ 2.14.

Mr. Reynolds acknowledges that Safeway's Online Pricing Policies (the "Policy") applied to his order. *Id.* ¶¶ 2.2, 2.11. But he selectively quotes only the first sentence of the Policy: "You will pay the prices, fees, and other charges, and receive the promotions, offers, discounts, and savings applicable to your order at the time of online checkout, regardless of the date of scheduled delivery/pickup." *Id.* ¶ 2.2.

He omits the rest, which informs customers that the prices for items sold by weight—including the chicken Mr. Reynolds bought—and order totals given online are only *estimates*:

---

[1] Safeway and Albertson's timely removed the case to this Court. Not. of Removal, ECF No. 1 (Feb. 18, 2022). Mr. Reynolds later added ACI as a defendant. *See* SAC.

MOTION TO COMPEL OR DISMISS  – 5
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

> The **Estimated Total** shown at checkout (i) **includes** coupons you clipped, Buy One, Get One or similar deals, Safeway for U™ Program Member price (where applicable), sale price, and Promo Code discounts; delivery fees, if applicable; and **the estimated cost of items sold by weight**, **but (ii) does not include** certain applicable taxes, bottle/can deposits, and bag other fees (unless noted); **the final cost of items sold by weight**; the cost of substituted items; or reductions for out of stock items removed from your order. . . . **The final amount shown on your receipt at the time of delivery or pickup will reflect these adjustments.**

Mhatre Decl. ¶ 19, Ex. C ("Policy") at 1 (emphasis added); *see also id.* ¶¶ 18, 20.

The Policy also states that Safeway "reserve[s] the right to (i) modify or cancel any offer/order, promotion, discount, or savings" and to "complete and fill the remainder of your order in accordance with your selected substitution preferences" if an item is unavailable. Policy at 1.

Based on the one-sentence excerpt from Safeway's Policy, Mr. Reynolds alleges that both Safeway and Albertson's violated the Washington Consumer Protection Act ("CPA") by allegedly charging him more for the priced-by-weight chicken than the online estimate. *See* SAC ¶¶ 5.1–5.3. He also asserts a fraudulent inducement claim based on "the same actions which constitute a violation of the CPA." *Id.* ¶ 6.1. In addition to damages, he seeks an injunction he labels "public injunctive relief" to enjoin "representations similar to those at issue" or to "revise [Safeway's] order processing system to conform to its representations." *Id.* ¶¶ 8.1–8.4.

Although he purchased his order from Safeway in accordance with Safeway's Policy, Mr. Reynolds also asserts claims against Albertson's and ACI. *Id.* ¶¶ 7.1–7.2. As to Albertson's, he alleges that Albertson's is "a grocery store operator doing business in King County, Washington," *id.* ¶ 1.5, and "us[e]s the same online ordering system and ha[s] the same online ordering policies" as Safeway, *id.* ¶ 2.16. He does not allege that he reviewed any policy from Albertson's or bought any groceries from Albertson's. Mr. Reynolds also alleges liability on ACI's part because he contends Safeway and Albertson's are "agents and/or alter ego of" ACI and "wholly owned and managed by" ACI. *Id.* ¶ 7.2.

MOTION TO COMPEL OR DISMISS – 6
(No. 2:22-cv-00197-TL)

Mr. Reynolds seeks to represent a class of "all individuals throughout Washington State and throughout the United States who have used Safeway's or Albertson's' online ordering system." *Id.* ¶ 3.1. Mr. Reynolds—an attorney—purports to act as both "class representative" and "class attorney." *Id.* ¶¶ 3.8–3.12.

## III.    ARGUMENT

Mr. Reynolds agreed to mandatory individual arbitration after receiving conspicuous notice of the Terms of Use and the arbitration provision, having the opportunity to review them, and affirmatively agreeing to them. He also agreed that an arbitrator—not the Court—would decide any issue other than whether there is an arbitration agreement in the first place. The Court should therefore compel arbitration and, because the entire dispute must be arbitrated, dismiss this action.

Arbitration aside, the Court should dismiss under Rule 12(b)(6) because Mr. Reynolds fails to state a claim for relief after twice amending his Complaint. He fails to raise even an inference of fraudulent inducement or of deception or public interest impact that could possibly support a CPA claim. And as to Albertson's, Mr. Reynolds's claims are even more tenuous because he alleges nothing more than that Albertson's has the same online ordering service and the same pricing policy as Safeway. Finally, Mr. Reynolds fails to state a claim against ACI because he alleges no facts supporting a theory of *respondeat superior* liability for ACI's subsidiaries' alleged actions. The Court should dismiss with prejudice because Mr. Reynolds cannot cure the claims through an amendment; the claims are based on the flawed theory that a reasonable consumer would be misled by a single sentence of Safeway's Policy read in isolation. *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

Finally, the Court should strike Mr. Reynolds's class allegations. By attempting to serve as both class representative and class counsel, Mr. Reynolds created an impermissible conflict of interest.

MOTION TO COMPEL OR DISMISS – 7
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**A.    Mr. Reynolds agreed to individual arbitration and cannot proceed in court on behalf of a putative class.**

**1.    Legal standard for compelling arbitration.**

Defendants move to compel arbitration and dismiss on that basis under Federal Rule of Civil Procedure 12(b)(1), the Federal Arbitration Act ("FAA"), and the Terms of Use. 9 U.S.C. § 4; TOU at 11 (stating that arbitration provision in the Terms of Use is "governed by the Federal Arbitration Act"); *Gutierrez v. FriendFinder Networks Inc.*, No. 18-cv-05918-BLF, 2019 WL 1974900, at *2 (N.D. Cal. May 3, 2019) (recognizing that motions to "enforce an arbitration provision" may be brought "under Rule 12(b)(1)" (cleaned up)); *Lemberg v. LuLaRoe, LLC*, No. ED CV 17-02102-AB (SHKx), 2018 WL 6927836, at *3 (C.D. Cal. Mar. 1, 2018) ("[C]ourts generally agree that [a motion to compel arbitration] is a Rule 12(b) motion.").

Under the FAA, an arbitration provision in an agreement involving a commercial transaction is "valid, irrevocable, and enforceable." 9 U.S.C. § 2. On a motion to compel arbitration, the Court determines only whether the parties agreed to arbitrate and, if so, whether their agreement covers the asserted claims. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both conditions are met—or if, like here, there is a valid arbitration agreement and the parties delegated to the arbitrator the second question—the Court must compel arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court . . . .").

**2.    Mr. Reynolds accepted the Terms of Use and agreed to mandatory individual arbitration.**

Mr. Reynolds accepted the Terms of Use—and agreed to mandatory individual arbitration—just as plaintiffs have in scores of cases throughout the Ninth Circuit and this District. Consistent with that case law, the Court should compel arbitration and dismiss.

Courts routinely enforce "clickwrap agreements"—like the Terms of Use here—when the customer had reasonable notice of the terms and affirmatively agreed to them. *See, e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014) (holding that such agreements will

MOTION TO COMPEL OR DISMISS  – 8
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

be binding when company provides "reasonable notice" of "proposed terms" and consumer "unambiguously manifest[ed] assent" to them); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016) ("[O]ur Circuit has recognized that the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable."); *In re Wyze Data Incident Litig.*, No. C20-0282-JCC, 2020 WL 6202724, at *2 (W.D. Wash. Oct. 22, 2020) (Coughenour, J.) (recognizing that judges in the Western District of Washington have "consistently upheld arbitration provisions contained in clickwrap agreements"). With clickwrap agreements, customers have sufficient notice when terms are presented by "a hyperlinked alert" and they assent to terms by "an affirmative action," such as selecting a button. *Weimin Chen v. Sierra Trading Post, Inc.*, No. 2:18-cv-1581-RAJ, 2019 WL 3564659, at *2 (W.D. Wash. Aug. 6, 2019) (Jones, J.).

Before making his purchase, Mr. Reynolds received notice of the Terms of Use and had the opportunity to review them by clicking on a conspicuous hyperlink. Mhatre Decl. ¶ 12, Ex. B at 1; *id.* ¶¶ 14–15. Mr. Reynolds agreed to the Terms of Use by selecting the "Place Order" button below the statement acknowledging that he "read and agree[d]" to the Terms of Use. *Id.* ¶¶ 11, 12, Ex. B at 1. He could not—and did not—purchase groceries online without first agreeing to the Terms of Use. *Id.* ¶¶ 13, 16. He therefore agreed to arbitrate on an individual basis the claims he asserts against Defendants.[2] TOU at 10 ("[Y]ou and Company agree that all controversies, claims, counterclaims, or other disputes arising between you and Company relating to these Terms or arising out of your access to or use of any of the Sites (each a 'Claim') will be resolved through binding and final arbitration"); *Adams v. AT & T Mobility, LLC*, 816 F. Supp. 2d 1077, 1083–84 (W.D. Wash. 2011) (Jones, J.) (holding that parent company could

---

[2] Because the agreement is explicitly between Mr. Reynolds and ACI, Albertson's, and Safeway, there is no reason to consider whether Albertson's or Safeway are third-party beneficiaries of the Terms of Use or the arbitration provision specifically. But even if there was a reason to consider that question, Albertson's and Safeway easily qualify as third-party beneficiaries who can enforce the arbitration provision because "performance under the contract would necessarily and directly benefit" Safeway and Albertson's. *Church v. Expedia Inc.*, No. C18-1812JLR, 2019 WL 2422577, at *4 (W.D. Wash. June 10, 2019).

MOTION TO COMPEL OR DISMISS  – 9
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

enforce arbitration where company definition "includ[ed] our assignees, agents, employees, officers, directors, shareholders, parent companies, subsidiaries, affiliates, predecessors and successors").

Mr. Reynolds could have rejected the Terms of Use and the arbitration provision by choosing not to buy groceries online and instead buying them at a store. Mhatre Decl. ¶ 17. The opportunity to reject the Terms of Use was not illusory; Mr. Reynolds could have gotten groceries without ever agreeing to the Terms of Use. *Id.* He chose instead to accept the Terms of Use and place his order online. *Id.* ¶¶ 13, 16; SAC ¶ 2.3.

Judges in this District repeatedly enforce agreements to arbitrate on facts nearly identical to those here. Judge John C. Coughenour, for example, held that the parties agreed to arbitrate where the plaintiffs "had to click a box indicating that they agreed to Defendant's terms and conditions, available via a hyperlink, before continuing." *In re Wyze*, 2020 WL 6202724, at *2. Because "the hyperlink" to the terms "was sufficiently conspicuous" and the plaintiffs "could not have accessed [their] account without, at some point, clicking a box indicating" their agreement, Judge Coughenour compelled arbitration and dismissed the case. *Id.* at *3–4.

Judge James L. Robart similarly held that a plaintiff agreed to terms of service via a webpage just like the Safeway checkout page and compelled arbitration. *Harbers v. Eddie Bauer, LLC*, No. C19-0968JLR, 2019 WL 6130822, at *6 (W.D. Wash. Nov. 19, 2019) (Robart, J.). The purchase page notified users that they agreed to the terms by placing the order, the notification text was "offset in blue" and included "a hyperlink," and the user had to "press one of the two 'Submit Order' buttons" to make the purchase. *Id.* Judge Robart concluded that the plaintiff agreed to arbitration because the defendant "provided reasonable notice that [the] purchase was subject to the Terms" and the plaintiff "assented to the Terms" by pressing the "Submit Order" button. *Id.* at *6–7 (cleaned up).

And to highlight just one more example, Judge Richard A. Jones concluded that the parties agreed to arbitrate where the business stated that the user would agree to terms of

MOTION TO COMPEL OR DISMISS  – 10
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

service—which included an arbitration provision—by placing an order and the terms were conspicuous and reviewable by hyperlink. *See Weimin Chen*, 2019 WL 3564659, at *3. Because the plaintiff had notice of and an opportunity to review the terms and agreed to them by "clicking" a "button," there was a valid agreement to arbitrate. *Id.*

The Court should reach the same conclusion. Mr. Reynolds had explicit notice of the Terms of Use before making his purchase; had the opportunity to review and, if he chose, reject them; and affirmatively agreed to the Terms of Use. He should be held to his agreement, and the Court should dismiss the action (or, in the alternative, stay it pending arbitration). *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 637–38 (9th Cir. 1988).

### 3. The parties delegated to the arbitrator questions about the scope of arbitration, leaving no other issue for the Court to decide.

Because Mr. Reynolds agreed to arbitrate, the only remaining question is whether that agreement covers his claims. *Chiron Corp.*, 207 F.3d at 1130. But the parties delegated to the arbitrator issues such as the scope of the agreement to arbitrate, so the Court should not evaluate that question. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, -- U.S. ---, 139 S. Ct. 524, 529–30 (2019) (holding that when parties "agree to have an arbitrator decide . . . whether their agreement covers a particular controversy," the court "may not decide the arbitrability issue").

The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions." *Id.* at 527. When an arbitration provision expressly applies to *all* disputes related to the agreement, the parties will have delegated to the arbitrator questions of arbitrability. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (affirming delegation where agreement gave arbitrator "exclusive authority to resolve any dispute relating to the enforceability of this Agreement" (cleaned up)); *see also In re Wyze*, 2020 WL 6202724, at *3 (holding that arbitration provision covering "all disputes and claims that arise from or relate to the Agreement . . . necessarily include[d] the enforceability of the arbitration agreement" (cleaned up)). That is because an agreement to arbitrate all disputes necessarily includes disputes

MOTION TO COMPEL OR DISMISS  – 11
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

specifically related to "arbitrability issues, including the scope of the agreement." *Diaz v. Nintendo of Am. Inc.*, No. C19-0116 TSZ, 2020 WL 996859, at *1 (W.D. Wash. Mar. 2, 2020) (Zilly, J.).

An arbitration provision that incorporates by reference the Judicial Arbitration and Mediation Service's ("JAMS") rules also "constitutes clear and unmistakable evidence" that the parties delegated arbitrability questions. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The JAMS rules empower the arbitrator to rule on "[j]urisdictional and arbitrability disputes, including disputes over the . . . scope of the agreement." *See* JAMS Streamlined R. 8(b). The express authorization for the arbitrator to decide accordingly becomes part of the parties' agreement to arbitrate. *In re Wyze*, 2020 WL 6202724, at *3 (holding that incorporation of "the Consumer Arbitration Rules" was "clear and unmistakable evidence that the parties intended to delegate the arbitrability question to an arbitrator" (cleaned up)); *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1013 (S.D. Cal. 2017) (holding that the parties agreed to delegate arbitrability questions by "incorporat[ing] JAMS's procedural rules into the arbitration agreement, which provide JAMS with authority to determine arbitrability"); *Diaz*, 2020 WL 996859, at *1 (holding that parties delegated "all other arbitrability issues" because agreement incorporated American Arbitration Association rules).

The arbitration provision's plain language and its incorporation of the JAMS rules confirm that the parties here agreed to delegate questions about the arbitration provision's scope. The parties agreed that "*all* controversies, claims, counterclaims, or other disputes arising between you and Company relating to these Terms . . . will be resolved through binding and final arbitration." TOU at 10 (emphasis added). They also agreed that the JAMS Rules apply in arbitration, which means the arbitrator must decide questions of arbitrability. *Id.* The arbitration provision's broad language and incorporation of the JAMS Rules require that the scope of the agreement be arbitrated rather than litigated in this Court. *See Rent-a-Ctr.*, 561 U.S. at 68; *Diaz*, 2020 WL 996859, at *1 (holding that the parties delegated "all other arbitrability issues" because

MOTION TO COMPEL OR DISMISS – 12
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

the agreement incorporated the AAA rules). Because that question is for the arbitrator, there is nothing else for the Court to decide. *Weimin Chen*, 2019 WL 3564659, at *4 ("[T]he Court finds that the issue of arbitrability is delegated to the arbitrator and will not address Chen's remaining contentions concerning the scope of the agreement.").

### 4.   Even if the parties had not delegated such questions, however, Mr. Reynolds's claims fall within the scope of the arbitration provision.

But even if the Court determines that the parties have not delegated arbitrability questions, the Court should nonetheless conclude that Mr. Reynolds's claims are subject to arbitration. It is well established that "[t]o require arbitration," a plaintiff's "factual allegations need only touch matters covered by the contract containing the arbitration clause." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (cleaned up). Over and over, courts in this Circuit have reaffirmed that broad language in arbitration agreements—like that in the Terms of Use—reaches "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id.*; *see also Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983).

In *Chiron*, for example, the Court held that an agreement requiring the arbitration of "[a]ny dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of this Agreement" was "broad and far reaching," leaving "little doubt that the dispute is subject to arbitration." 207 F.3d at 1131. Because the dispute in *Chiron* "unquestionably" related to the agreement, the dispute fell "within the parties' agreement to arbitrate." *Id.*; *see also Schreiber v. Amazon.com, Inc.*, No. C08-896RSM, 2008 WL 4681909, at *3 (W.D. Wash. Oct. 20, 2008) (Martinez, J.) (holding that claims "fit squarely within the scope of the arbitration agreement" because it covered "any controversy relating to the agreement").

The same is true here. The Terms of Use require individual arbitration of "all controversies, claims, counterclaims, or other disputes arising between you and Company

MOTION TO COMPEL OR DISMISS  – 13
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

relating to these Terms." TOU at 10. That broad language covers Mr. Reynolds's claims related to his online purchase under the Terms of Use. *See Chiron*, 207 F.3d at 1131.

The fact that Mr. Reynolds uses the phrase "public injunctive relief" in his Complaint does not change that conclusion. Although the arbitration provision does not apply to "cases involving claims for public injunctive relief (as defined by law)," this case does not actually involve public injunctive relief, despite what Mr. Reynolds calls it. TOU at 10.

To begin, public injunctive relief "as defined by law" refers to relief available under California's Consumers Legal Remedies Act, unfair competition law, and false advertising law. *McGill v. Citibank, N.A.*, 393 P.3d 85, 90 (Cal. 2017) (expressly recognizing public injunctive relief). Mr. Reynolds alleges that because the Washington CPA generally protects the public, any injunction under the CPA "is thus public injunctive relief." SAC ¶¶ 8.2–8.3. That circular explanation fails to show that Washington recognizes public injunctive relief "as defined by law"—and as the arbitration provision requires in order for a case to fall outside it. TOU at 10.

Regardless, simply labeling injunctive relief as "public" does not make it so. The Ninth Circuit recently confirmed in *Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535, 542 (9th Cir. 2021), that public injunctive relief is a narrow and specialized form of relief. Public injunctive relief is "limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons." *Id*. Private injunctive relief, on the other hand, "benefit[s] . . . a discrete class of persons" or "require[s] consideration of the private rights and obligations of individual non-parties." *Id.* at 543. The Court "must look beyond . . . conclusory assertions" to distinguish between private and public injunctive relief. *Id.* at 548.

In *Hodges*, the Ninth Circuit concluded that the supposed "public injunctive relief" was actually private because it could benefit only a "group of individuals"—cable subscribers—"similarly situated to the plaintiff." *Id.* at 549 (quotations omitted). For that reason, the sought-after relief would not "*primarily* benefit the general public as a more diffuse whole." *Id.* The

MOTION TO COMPEL OR DISMISS  – 14
(No. 2:22-cv-00197-TL)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Ninth Circuit also concluded that "administering any injunctive relief of the sort sought here would entail the consideration of the individualized claims of numerous cable subscribers." *Id.*

So it is with Mr. Reynolds's request for an injunction to prevent "representations similar to those at issue in this care [sic]" or to "revise [the] order processing system to conform to [Safeway's] representations." SAC ¶ 8.4. Just like the cable subscribers in *Hodges*, that relief would benefit only individuals similarly situated to Mr. Reynolds—customers who ordered groceries online at safeway.com—rather than "the general public as a diffuse whole." 21 F.4th at 549. Moreover, Mr. Reynolds's request to enjoin similar representations or to revise the ordering system would require the Court to consider the "individualized claims of numerous" customers: what representations Safeway may have made and when, when customers made their purchases, what representations customers saw before making their purchases, what they thought the representations meant, and whether they relied on any representations. *Id.* Those individualized questions and the fact that relief would only benefit other Safeway-online purchasers show that Mr. Reynolds actually requests *private* injunctive relief. *See id.* at 548–49.

Because Mr. Reynolds's claims fall within the arbitration provision's scope and he does not seek public injunctive relief "as defined by law," the Court should compel arbitration and dismiss the action.

**B.      Alternatively, the court should dismiss Mr. Reynolds's claims and strike his improper class allegations.**

If the Court does not compel arbitration, Mr. Reynolds's claims still cannot proceed because his Complaint should be dismissed or, at the very least, his class allegations should be stricken.

**1.      Legal standard for dismissing for failure to state a claim and for striking class allegations.**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal where a plaintiff fails to plead sufficient facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). When "the well-pleaded

MOTION TO COMPEL OR DISMISS  – 15
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

facts do not permit the court to infer more than the mere possibility of misconduct" or support only an "obvious alternative explanation" for the alleged harm, the claims should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations omitted). Moreover, a plaintiff must plead with particularity a consumer protection claim based on fraud. Fed. R. Civ. P. 9(b); *see also Woodell v. Expedia Inc.*, No. C19-0051JLR, 2019 WL 3287896, at *10 (W.D. Wash. July 22, 2019) ("[T]he heightened Rule 9(b) standard" applies to CPA claim based on fraud.).

In ruling on a 12(b)(6) motion to dismiss, the Court may consider documents referenced in but not attached to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court may also consider a document "referenced in a complaint but not explicitly incorporated therein if the complaint relies on" it and "its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Federal Rule of Civil Procedure 12(f) allows a court to strike from a complaint "redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), including improper class allegations, *see In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1236 (N.D. Cal. 2012). A court can strike class allegations at this stage when "it is clear from the pleadings that class claims cannot be maintained." *Id.* Striking such allegations allows the Court and parties "to avoid the expenditure of time and money . . . from litigating spurious issues." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted).

> **2.    Mr. Reynolds fails to allege facts giving rise to a plausible inference of a CPA claim.**

Mr. Reynolds alleges that Safeway and Albertson's violated the CPA by (1) "deceptively advertising a pricing policy on their websites and . . . failing to apply it or changing it"; (2) "agreeing to charge one price for a product and then later unilaterally charging a higher price without consent and/or notification"; and (3) "charging a uniform price for products advertised as having a per weight price when the weight of the delivered products differed from each other and/or the product advertised." SAC ¶¶ 5.1–5.3. The Court should dismiss these claims because

MOTION TO COMPEL OR DISMISS  – 16
(No. 2:22-cv-00197-TL)

Mr. Reynolds fails to plead that Safeway and Albertson's engaged in any unfair or deceptive practice or that there is any public interest impact from this single transaction. And as to Albertson's, Mr. Reynolds fails to allege any injury or causation because he did not buy anything from Albertson's subject to any Albertson's pricing policy.

To plead a CPA claim, a plaintiff must allege: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) impacting the public interest; (4) an injury to business or property; (5) proximately caused by the act. *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1107 (Wash. 2015). For an act to be "deceptive," it must have the "capacity to deceive a substantial portion of the public." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). Deception exists if the alleged act was likely to mislead a reasonable consumer. *State v. Mandatory Poster Agency, Inc.*, 398 P.3d 1271, 1277 (Wash. Ct. App. 2017) (cleaned up). Unfairness exists if the alleged conduct "offends public policy as established by statutes or the common law." *Bund v. Safeguard Props. LLC*, No. C16-920 MJP, 2018 WL 3917930, at *5 (W.D. Wash. Aug. 16, 2018) (citations omitted). Whether an alleged act is deceptive or unfair is a question of law for the Court. *Trujillo*, 355 P.3d at 1107.

A plaintiff must also allege that the deceptive or unfair act has a "public interest impact." *Hangman*, 719 P.2d at 533. To adequately plead that "a private dispute . . . affects the public interest," a plaintiff must allege facts from which the Court can reasonably infer "the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion." *Id.* at 538.

Mr. Reynolds attempts to generate deception or unfairness by taking out of context a single sentence of Safeway's Policy. But no reasonable consumer would be deceived by the *full* Policy because Safeway explained—in detail and repeatedly—that the online prices and order totals were estimates only.[3] Policy at 1. Safeway also explained that prices may change for items charged by weight and depending on availability, the need to make substitutions, and whether

---

[3] The Court should consider the full Policy under the incorporation-by-reference doctrine—Mr. Reynolds quotes part of it in his Complaint—and because Mr. Reynolds's claims rely on it, as his allegations demonstrate. *Knievel*, 393 F.3d at 1076; *Swartz*, 476 F.3d at 763; SAC ¶¶ 2.2–2.3, 2.11, 2.13.

MOTION TO COMPEL OR DISMISS – 17
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

any modifications were made. *Id.* Safeway also said that it could "modify or cancel any offer/order, promotion, discount, or savings" and "correct . . . pricing errors." *Id.* Where—as here—a company "discloses that it reserves the right to" modify prices, such as by "assess[ing] additional fees," a reasonable consumer cannot be deceived by those "additional fees." *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188 (W.D. Wash. 2008); *see also Cole v. Keystone RV Co.*, No. C18-5182 TSZ, 2021 WL 3111452, at *4 (W.D. Wash. July 22, 2021), *app. docketed*, No. 21-35701 (9th Cir. 2021) (holding that "contention that Keystone failed to disclose facts . . . is clearly contradicted by the Owner's Manual that contains information about each topic").

Beyond that, Mr. Reynolds does not allege at all any specific deceptive act or practice by *Albertson's*: he does not allege a specific Albertson's policy he contends is relevant, any practice by Albertson's he contends is unfair, or any representation by Albertson's he contends is deceptive. *See Ambach v. French*, 216 P.3d 405, 410 (Wash. 2009) (recognizing there is no CPA claim when defendant did not "actively solicit[] the claimant's business"); *Robertson v. GMAC Mortg. LLC*, 982 F. Supp. 2d 1202, 1209 (W.D. Wash. 2013) (recognizing that third-party company "had no obligation to" plaintiff). Nor does he allege that he ever reviewed an Albertson's policy or ordered any groceries from Albertson's. Mr. Reynolds alleges only that Albertson's uses "the same online ordering system" and has "the same online ordering policies." SAC ¶ 2.16. Those barebones allegations about supposed similarities cannot support his claim.

Mr. Reynolds also fails to plead an unfair act by alleging that Safeway and Albertson's "[u]nilaterally charg[ed] a higher price without consent and/or notification." SAC ¶ 5.2. The Policy—and Mr. Reynold's acknowledgement of the Policy—belies his allegation that he did not have notice he could be charged a different price than quoted online. It is also beyond dispute, based on the allegations in the Complaint, that Mr. Reynolds consented to the Policy by placing his order. SAC ¶ 2.3; TOU at 1. And of course, Albertson's did not charge Mr. Reynolds at all because he did not purchase anything from Albertson's.

MOTION TO COMPEL OR DISMISS – 18
(No. 2:22-cv-00197-TL)

Simply put, Mr. Reynolds has not pleaded any deception or unfairness. He bought chicken priced by weight and was charged a final price different than the estimated price given online. SAC ¶¶ 2.4–2.9. Safeway told him that could happen, and Mr. Reynolds still opted to make the purchase. Policy at 1. Adjusting prices as circumstances change is a reasonable practice, particularly because Safeway disclosed that possibility. Safeway must account for the variation in product weights and prices, changes that can happen between when an order is placed online and when the order is fulfilled, and other reasonable modifications. Mr. Reynolds's allegations *confirm* that Safeway applied the Policy to the chicken he bought just as Safeway said it would. That's the opposite of deception.

Mr. Reynolds also fails to allege facts to support the public interest element of his CPA claim. He alleges that he was charged the same price ($16.16) for the two "Chicken Packs" he received, even though one pack weighed less than the other. *Id.* ¶¶ 2.5–2.9, 2.14, 5.3. But the only reasonable inference is that someone made a mistake when ringing up the chicken and inadvertently charged Mr. Reynolds twice for the higher-priced chicken. A single mistake made in one order cannot support a CPA claim because it did not affect the *public*. *See Sato v. Century 21 Ocean Shores Real Estate*, 681 P.2d 242, 244–45 (Wash. 1984) (holding that court could not infer public interest impact when complained-of act could have been "simply an inadvertent isolated mistake"); *see also Hangman*, 719 P.2d at 538 (holding no CPA liability where transaction is "essentially a private dispute"); *Iqbal*, 556 U.S. at 679 (holding dismissal is appropriate where alleged facts present "obvious alternative explanation").

Mr. Reynolds's CPA claim against Albertson's also fails for another reason: he has not plausibly alleged any injury caused by Albertson's. Under the CPA, "the deceptive act or practice" must "proximately cause[] injury to the plaintiff's business or property." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 902 (Wash. 2009) (quotations omitted). Mr. Reynolds did not experience any allegedly deceptive act or practice *by Albertson's* and did not buy anything *from Albertson's*. There is no inference even that Albertson's did anything that injured

MOTION TO COMPEL OR DISMISS – 19
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Mr. Reynolds. Mr. Reynolds therefore fails to allege injury or causation under the CPA as to Albertson's.

Mr. Reynolds fails to plead sufficient facts—let alone with the required particularity—giving rise to a plausible inference that either Safeway or Albertson's violated the CPA. *See Bund*, 2018 WL 3917930, at *4 (recognizing plaintiff must "plead with particularity the time, place, and content of the false representations . . . , as well who is responsible for the representations and what is false or misleading about them"). The Court should therefore dismiss Mr. Reynolds's CPA claims.

### 3. Mr. Reynolds fails to adequately plead a claim for fraudulent inducement.

Mr. Reynolds also asserts a fraudulent inducement claim by Safeway and Albertson's "through the same actions which constitute a violation of the CPA." SAC ¶ 6.1. To state a claim for fraudulent inducement, a plaintiff must allege "(1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person to whom it is made; (6) the recipient's ignorance of its falsity; (7) the recipient's reliance on the truth of the representation; (8) the recipient's right to rely upon it; and (9) consequent damages." *Chamberlain Grp., Inc. v. Nassimi*, No. C09-5438BHS, 2010 WL 4286192, at *6 (W.D. Wash. Oct. 25, 2010).

For the same reasons Mr. Reynolds fails to state a claim under the CPA, he fails to state a claim for fraudulent inducement based on "the same actions." *See supra* § III.B.2. Mr. Reynolds has not plausibly alleged any false statement—the full Safeway Policy makes that clear—and Mr. Reynolds has not alleged any damages caused by Albertson's. *Id.*

Mr. Reynolds's fraudulent inducement claim also fails for at least two additional reasons. *First*, the statement that Mr. Reynolds alleges was fraudulent—that Safeway would apply prices to online orders as of the day the order was made—was not a statement of an existing fact. SAC ¶ 2.2. Rather, taken in the light most favorable to Mr. Reynolds, it was a "promised performance

MOTION TO COMPEL OR DISMISS – 20
(No. 2:22-cv-00197-TL)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

of a future act"—to apply certain prices at the later fulfillment date—and "fraud cannot be predicated upon a promise to perform in the future." *Vyas v. Wallach*, No. C06-1193RSM, 2006 WL 8454883, at *2 (W.D. Wash. Nov. 30, 2006).

*Second*, he fails to allege reliance. Although Mr. Reynolds asserts that he "was induced" by a single sentence of the Policy to "place an order," that conclusory allegation is insufficient. SAC ¶ 2.3. Mr. Reynolds does not allege that he would not have purchased groceries online had Safeway disclosed that prices could change. Nor could he because Safeway *did disclose* that prices and order totals could change, particularly for items sold by weight. Policy at 1. Mr. Reynolds's misunderstanding of the Policy or his failure to read it cannot support a fraudulent inducement claim. *See Tandiama v. NovaStar Mortg., Inc.*, No. C03-909JLR, 2005 WL 1287996, at *3 (W.D. Wash. May 31, 2005) (holding that reliance is unreasonable "where the party possesses written documents, knowledge, or expertise" contradicting alleged misrepresentation). The Court should dismiss the claim.

### 4. Mr. Reynolds fails to plead any facts to support a *respondeat superior* theory of liability.

Mr. Reynolds also alleges that ACI is liable on a theory of *respondeat superior* because Safeway and Albertson's are "wholly owned and managed" by ACI and "agent[s] and/or alter ego[s]" of ACI. SAC ¶¶ 7.1–7.2. Those allegations fall far short of the plausibility standard.

For starters, the fact of a parent-subsidiary relationship cannot alone support a *respondeat superior* theory. *See Bastida v. Nat'l Holdings Corp.*, No. C16-388RSL, 2016 WL 4250135, at *2 (W.D. Wash. Aug. 4, 2016) ("It is a general principle of corporate law that a parent company is not inherently liable for the torts of its subsidiaries."). A plaintiff "must go beyond alleging mere ownership to show that defendant had direct involvement in the decisions of" the subsidiary. *Id.* A parent company "can be held directly liable" only "for its own conduct," such as when "the parent company directly participates in" or "directs the conduct." *Hagstrom v. Safeway Inc.*, No. C20-1160 RAJ-TLF, 2020 WL 6826736, at *3 (W.D. Wash. Nov. 20, 2020).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

A parent company can also be held liable if it "misused" the "corporate form," justifying piercing the corporate veil. *Id.* The plaintiff must allege facts showing "an overt intention by the corporation to disregard the corporate entity in order to avoid a duty owed to the party seeking to invoke the doctrine." *Minton v. Ralston Purina Co.*, 47 P.3d 556, 562 (Wash. 2002).

Here, Mr. Reynolds alleges only that ACI owns and manages Safeway and Albertson's. He does not allege any direct involvement in the subsidiaries' decisions, direct participation in the online ordering process or the Safeway Policy, or any other direct involvement related to his allegations. Simply stating that ACI "manages" Safeway and Albertson's by virtue of the corporate relationship is insufficient. *See Williams v. Albertsons Companies LLC*, 822 F. App'x 579, 581 (9th Cir. 2020) ("As an initial matter, Albertsons' status as a Safeway shareholder does not automatically make it separately liable," and plaintiff "offers no reason to pierce the corporate veil here." (citations omitted)); *Hagstrom*, 2020 WL 6826736, at *3 (holding that plaintiff did not allege direct liability because no allegations that parent entities "exercised control over the Safeway store location in question or directed Safeway's conduct"). Mr. Reynolds also alleges no facts that ACI abused or disregarded the corporate form. *Hagstrom*, 2020 WL 6826736, at *3 (holding that plaintiff alleged no "facts indicating that" parent entities "disregarded the corporate entity to avoid a duty owed to plaintiff" or "indicating that plaintiff is relying on an alter ego theory").

Magistrate Judge Theresa L. Fricke in *Hagstrom v. Safeway Inc.*, 2020 WL 6826736, at *3, recently denied as futile an amendment to add two parent entities for Safeway. As Mr. Reynolds does here, the plaintiff made only conclusory allegations about the relationship between Safeway and those parent entities. *Id.*; *see also Hagstrom v. Safeway Inc.*, No. C20-1160 RAJ-TLF, ECF No. 37 (denying motion to amend) The plaintiff did "not provide any facts indicating that [the parent entities] disregarded the corporate entity to avoid a duty owed to plaintiff" or "allege any facts indicating that plaintiff is relying on an alter ego theory of liability." *Hagstrom*, 2020 WL 6826736, at *3. The plaintiffs also failed to allege any facts

MOTION TO COMPEL OR DISMISS  – 22
(No. 2:22-cv-00197-TL)

suggesting that the parent entities "exercised control over the Safeway store location in question or directed Safeway's conduct." *Id.*

The Court should likewise conclude that Mr. Reynolds fails to sufficiently allege facts to support a *respondeat superior* theory of liability and dismiss the claims against ACI.

### 5.   Alternatively, the Court should strike Mr. Reynolds's class allegations because he cannot serve as both class representative and class counsel.

If the Court does not compel arbitration or dismiss for failure to state a claim, the Court should strike Mr. Reynolds's improper class allegations. Mr. Reynolds is an attorney who purports to be both class representative and class counsel, and his "class claims cannot be maintained." *In re Clorox*, 894 F. Supp. 2d at 1236; *see also* SAC ¶¶ 3.10–3.12.

Despite Mr. Reynolds's contention that "there is no evidence of any conflict of interest," SAC ¶ 3.10, well-established law holds otherwise. Courts across the country have roundly rejected an attorney's attempt to serve as both class representative and class counsel because the arrangement endangers the interests of absent class members. *See, e.g.*, *In re Cal. Micro Devices Sec. Litig.*, 168 F.R.D. 257, 260 (N.D. Cal. 1996) ("[A]n attorney may not serve both as class representative and class counsel."); *Turoff v. May Co.*, 531 F.2d 1357, 1360 (6th Cir. 1976) (same); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90–92 (7th Cir. 1977) (same); *Missud v. Oakland Coliseum Joint Venture*, No. 1202967, 2013 WL 812428, at *26 (N.D. Cal. March 5, 2013) (same); *World, L.L.C. v. Atlas Choice Corp.*, No. 1:15 CV 24, 2015 WL 2381624, at *2 (N.D. Ohio May 19, 2015) (same). Courts have also recognized that an attorney cannot serve in both roles when "he is a necessary witness in the case" because that would violate the attorney's ethical obligations. *Atlas Choice*, 2015 WL 2381624, at *2; *see also* Wash. R. Prof'l Conduct 3.7 ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . .").

Mr. Reynolds cannot serve as both class representative and class counsel because that dual role creates an inherent conflict of interest that threatens the rights of absent class members.

MOTION TO COMPEL OR DISMISS  – 23
(No. 2:22-cv-00197-TL)

Moreover, Mr. Reynolds is a necessary witness because his claims are based on purchases he made and what he understood about the Policy before making a purchase. SAC ¶¶ 2.3–2.10. The Court should therefore strike Mr. Reynolds's class allegations. *See Missud*, 2013 WL 812428, at *26 (granting motion to strike class allegations because "[a]s alleged in the Complaint, Plaintiff attempts to act as both class counsel and class representative").

### IV.    CONCLUSION

Because Mr. Reynolds agreed to arbitrate claims on an individual basis but ignored that agreement by filing this putative class action in court, Defendants request that the Court grant their motion to compel arbitration and dismiss—or, in the alternative, stay. If the Court declines to compel arbitration, Defendants request that the Court dismiss Mr. Reynolds's Complaint for failure to state a claim or strike his improper class allegations.[4]

---

[4] Pursuant to Section V of the Honorable Judge Tana Lin's Standing Order for All Civil Cases, Defendants have not submitted with this Motion a proposed order. Standing Order § V.

MOTION TO COMPEL OR DISMISS – 24
(No. 2:22-cv-00197-TL)

Respectfully submitted this 31st day of March, 2022.

s/ David A. Perez
James F. Williams, WSBA No. 23613
JWilliams@perkinscoie.com
David A. Perez, WSBA No. 43957
DPerez@perkinscoie.com
Mallory Gitt Webster, WSBA No. 50025
MWebster@perkinscoie.com
Madeline D. Swan, WSBA No. 56355
MSwan@perkinscoie.com

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Defendants Safeway, Inc.,
Albertson's LLC, and Albertsons Companies,
Inc.

MOTION TO COMPEL OR DISMISS  – 25
(No. 2:22-cv-00197-TL)

**CERTIFICATE OF CONFERRAL**

Defendants certify that on March 17, 2022, pursuant to Sections II.D and II.I of the Honorable Tana Lin's Standing Order for All Civil Cases, the parties met and conferred regarding Defendants' Motion to Compel Arbitration or, in the Alternative, to Dismiss for Failure to State a Claim or to Strike Class Allegations to determine if Defendants' Motion would be necessary. Defendants identified the bases for their Motion and invited Plaintiff Seth Reynolds to identify any reasons he thought Defendants should consider "to determine whether [the Motion] can be avoided." Standing Order § II.I. Mr. Reynolds did not identify any such reasons, saying only that he disagreed with Defendants' position, including about the arbitration provision. Mr. Reynolds did not say that he intended to file another amended complaint.

I certify under penalty of perjury that the foregoing is true and correct.

DATED March 31, 2022.

s/ David A. Perez
David A. Perez, WSBA No. 43957
DPerez@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorney for Defendants Safeway, Inc., Albertson's LLC, and Albertsons Companies, Inc.

CERTIFICATE OF CONFERRAL
(No. 2:22-cv-00197-TL)