UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SETH REYNOLDS,<br><br>                Plaintiff,<br>    v.<br><br>SAFEWAY, INC., et al.,<br><br>                Defendants. | CASE NO. C22-0197TL<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION |

## I.    INTRODUCTION

Before the court is the motion to compel arbitration or, in the alternative, to dismiss this matter for failure to state a claim or to strike class allegations filed by Defendants Safeway, Inc., Albertson's LLC ("Albertson's"), and their parent company, Albertsons Companies, Inc. ("ACI") (collectively, "Defendants"). Dkt. No. 24; Dkt. No. 27. Plaintiff Seth Reynolds, who brings this action on behalf of himself and a proposed class, opposes Defendants' motion. Dkt. No. 26. The court has considered the motion, all materials submitted in support of and in opposition to the motion, and the governing law.

ORDER - 1

Being fully advised,[1] the court GRANTS Defendants' motion to compel arbitration, DENIES their motions to dismiss or strike, and STAYS this action.

## II. BACKGROUND

This case is a proposed class action arising from Mr. Reynolds's allegations that Safeway and Albertson's made deceptive representations on their online ordering system and, as a result, overcharged him and others when they ordered groceries for home delivery through that system. Dkt. No. 19. Below, the Court sets forth the factual and procedural background relevant to this motion.

### A. Factual Background

#### 1. Mr. Reynolds's Factual Allegations

On January 4, 2022, Mr. Reynolds placed an order through Safeway's online ordering service. Dkt. No. 19 ¶ 2.3. The home page of the service states, "You will pay the prices, fees, and other charges, and receive the promotions, offers, discounts, and savings applicable to your order at the time of online checkout, regardless of the date of scheduled delivery/pickup." *Id.* ¶ 2.2. Mr. Reynolds alleges that he was induced by this representation to place an online order for home delivery of three four-pound packs of chicken breasts at a price of $11.96 each, or $2.99 per pound. *Id.* ¶¶ 2.3–2.4. When the order arrived, however, it contained only two packs of chicken. *Id.* ¶ 2.5. Although Mr. Reynolds was charged $16.16 for each pack of chicken, one of the packs weighed 3.60

---

[1] Defendants request oral argument; Mr. Reynolds does not. *See* Dkt. Nos. 24, 26, 27. The Court concludes that oral argument would not be helpful to its disposition of the motion. *See* Local Civil Rule 7(b)(4).

pounds, and the other weighed 2.93 pounds. *Id.* ¶¶ 2.6–2.8. In addition, the price listed on the two packs of chicken was $4.49 per pound rather than $2.99. *Id.* ¶¶ 2.9–2.10. Thus, according to Mr. Reynolds, Safeway overcharged him by $12.80 by failing to honor "the promotion and/or price available the time of ordering and by charging for a greater quantity of chicken than was actually delivered," contrary to the representations Safeway made on the homepage of its online ordering service. *Id.* ¶¶ 2.11–2.15.

Mr. Reynolds further alleges that Safeway and Albertson's use the same online ordering system and that every online order from an ACI store in Washington and the United States displayed the language that he alleges Safeway violated. *Id.* ¶¶ 2.15–2.17. As a result, according to Mr. Reynolds, if only one person at each of ACI's 2,278 stores nationwide was deceived by this language each day, ACI has defrauded its customers by about $43 million over the past four years. *Id.* ¶¶ 2.19, 2.21, 2.23.

**2.     Defendants' Online Ordering Process and Arbitration Agreement**

Customers must complete an online checkout process to purchase groceries via Safeway's online ordering system. Dkt. No. 25 ¶ 7. After the customer enters their contact, delivery, and payment information, the customer completes the ordering process by selecting the "Place Order" button on the checkout page. *Id.* ¶¶ 9, 11; Dkt. No. 25-2 (screenshot of Safeway's online checkout page). The following text appears below the payment details section of the checkout page and directly above the "Place Order" button:

> By clicking 'Place Order', you acknowledge that you have read and agree to the Albertsons Companies' <u>Terms of Use</u> and <u>Privacy Policy</u> and that they apply to this order.

*Id.* (emphasis in original). The phrase "Terms of Use" appears in text that is red and underlined; if a customer clicks the text, the ordering service's Terms of Use are "immediately displayed in full" so that the customer can review them before placing the order. Dkt. No. 25 ¶¶ 13–14; Dkt. No. 25-1 (Terms of Use). A customer can reject the Terms of Use by not placing an order through the online ordering service and instead purchasing groceries in person. Dkt. No. 25 ¶ 17.

The Terms of Use provide that they "apply to all Company banners' websites, online ordering services, and mobile applications linking to or posting these Terms" and direct customers to "[p]lease read these Terms carefully." Dkt. No. 25-1 at 2, 3.[2] The Terms of Use state that by clicking the applicable button on the online ordering service, the customer "agree[s] to the most recently updated version of these Terms" and "indicate[s]" that they have "read, understand, and agree to these Terms." *Id.* at 3. Below this language, in boldface type, the Terms of Use state:

> **Please note that any dispute or claim related to these Terms or arising out of your access to and/or use of any of our Sites must be resolved by arbitration on an individual basis, and may not be arbitrated or otherwise pursued as a class action. Please refer to Section 24 in Part One below.**

*Id.* (emphasis in original). The customer can view Section 24 by clicking a link labeled "24. You Agree to Arbitrate Disputes and Will Not Be Part of a Class Action Against

---

[2] The Court cites the page number in the CM/ECF header when referring to the Terms of Use. The term "Company" in the Terms of Use refers to ACI and its subsidiaries. *Id.* at 2. A "banner" refers to the name of a chain of stores operated by the Company, such as Safeway, Albertson's, and others. *Id.*

Us" in a table of contents directly below the boldface language. *Id.* (emphasis in original). In relevant part, Section 24 states:

> Except for cases involving claims for public injunctive relief (as defined by law), you and Company agree that all controversies, claims, counterclaims, or other disputes arising between you and Company relating to these Terms or arising out of your access to or use of any of the Sites (each a "Claim") will be resolved through binding and final arbitration instead of through court proceedings. **This agreement to arbitrate means that each of you and Company waive your/its respective rights to a jury trial.** Any and all Claims shall be submitted for binding arbitration in accordance with the JAMS Streamlined Arbitration Rules & Procedures that are in effect at the time arbitration is initiated ("JAMS Rules"). You may, in arbitration, seek any and all remedies otherwise available to you under applicable federal, state or local laws, except as provided below in subsection (f) of this Section 24.)

*Id.* at 11–12 (emphasis in original). Subsection (f) states:

> Neither you nor Company may act as a class representative, nor participate as a member of a class of claimants, with respect to any Claim. Claims may not be arbitrated on a class or representative basis.

*Id.* at 12.

**B.      Relevant Procedural Background**

Mr. Reynolds originally filed his proposed class action complaint against Safeway and Albertson's in King County Superior Court on February 14, 2022. Dkt. No. 1-2 (original complaint); *see also* Dkt. No. 1-3 (unfiled amended complaint). Safeway and Albertson's removed the action to this court on February 18, 2022, alleging jurisdiction on the basis of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Dkt. No. 1 at 3–5. On March 3, 2022, Mr. Reynolds filed the operative second amended complaint, in

ORDER - 5

which he named ACI as an additional Defendant. Dkt. No. 19 at 1. Mr. Reynolds alleges claims on behalf of himself and a proposed nationwide class for violations of the Washington Consumer Protection Act ("WCPA"), RCW 19.86.020 *et seq.*; fraudulent inducement; respondeat superior; and a "public injunction," also under the WCPA. Dkt. No. 19 ¶¶ 3.1–4.7 (class allegations); *id.* ¶¶ 5.1–8.1 (claims). He seeks damages, attorney's fees, treble damages pursuant to the WCPA, and injunctive relief. *Id.* at 9.

### III.   ANALYSIS

Defendants argue that (1) Mr. Reynolds cannot proceed with his claims in this court because he agreed to submit this dispute to mandatory arbitration when he completed the checkout process on Safeway's online ordering system; (2) the Court must dismiss this action for failure to state a plausible claim for either violation of the WCPA or fraudulent inducement; and (3) Mr. Reynolds's class allegations must be stricken because his attempt to serve as both class representative and class counsel creates an impermissible conflict of interest. Dkt. No. 24 at 7. Because, as discussed below, the Court agrees with Defendants that Mr. Reynolds's claims must be submitted to mandatory arbitration, the court denies without prejudice Defendants' motions to dismiss for failure to state a claim or to strike Mr. Reynolds's class allegations.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, governs arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks

and citations omitted). Thus, arbitration agreements "shall be valid, irrevocable, and enforceable" unless invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339.

A district court's authority to compel arbitration arises under Section 4 of the FAA. *In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011); 9 U.S.C. § 4. In deciding whether to compel arbitration, a court's inquiry is generally limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both conditions are met, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide [for it].'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). If a valid agreement to arbitrate contains a delegation provision, the court's role is limited to analyzing whether the delegation provision itself is valid. *Id.* at 1133. If the delegation provision is valid, the arbitrator must resolve all further issues regarding arbitrability, including whether the agreement to arbitrate applies to the dispute at issue. *Id.*; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, --- U.S. ---, 139 S. Ct. 524, 529–30 (2019) (holding when parties "agree to have an arbitrator decide . . . whether their agreement covers a particular controversy," the court "may not decide the arbitrability issue"). The only way to circumvent this rule is by showing that the agreement to delegate arbitrability is itself

unenforceable. *Brennan*, 796 F.3d at 1132; *see Diaz v. Nintendo of Am. Inc.*, No. C19-1116TSZ, 2020 WL 996859, at *1 (W.D. Wash. Mar. 2, 2020) (holding only a challenge to enforceability of delegation provision itself, as opposed to arbitration agreement as a whole, may be decided by the court).

Mr. Reynolds does not dispute that the Parties entered into a valid agreement to arbitrate—to the contrary, he states that "[t]he arbitration agreement in this case is unambiguous." Dkt. No. 26 at 12. Therefore, the Court must determine whether the Parties entered into an enforceable agreement to delegate the threshold question of arbitrability to the arbitrator.

Defendants argue that the Terms of Use include a clear and unmistakable agreement to delegate the question of the arbitrability of Mr. Reynolds's claims to the arbitrator—in this case, JAMS. Dkt. No. 24 at 11–12. They point the following language in the Terms of Use:

> Except for cases involving claims for public injunctive relief (as defined by law), you and Company agree that all controversies, claims, counterclaims, or other disputes arising between you and Company relating to these Terms or arising out of your access to or use of any of the Sites (each a "Claim") will be resolved through binding and final arbitration instead of through court proceedings. . . . Any and all Claims shall be submitted for binding arbitration in accordance with the JAMS Streamlined Arbitration Rules & Procedures that are in effect at the time arbitration is initiated ("JAMS Rules").

*Id.* at 12 (quoting Terms of Use at 11). According to Defendants, the parties "clearly and unmistakably" delegated the role of resolving arbitrability questions to the arbitrator because this language both expressly states that all controversies and disputes relating to

the Terms of Use will be resolved through binding arbitration and incorporates the JAMS Rules. *Id.* at 11–12 (citing *Rent-a-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Indeed, the Ninth Circuit has held that an arbitration agreement "clearly and unmistakably" delegates issues of arbitrability to an arbitrator when it incorporates by reference the American Arbitration Association's rules of arbitration. *Brennan*, 796 F.3d at 1130. Although the Ninth Circuit has not directly held that incorporation of the JAMS Rules also "clearly and mistakably" delegates questions of arbitrability to the arbitrator, multiple district courts in this circuit have so held. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, No. C21-9978, 2022 WL 10584136, at *3 (C.D. Cal. Oct. 18, 2022) (determining that agreement's reference to JAMS Rules delegated issue of arbitrability to the arbitrator); *O'Connor v. Warner Bros. Animation Inc.*, No. C20-9291, 2021 WL 3598581, at *2 (C.D. Cal. Jan. 21, 2021) ("The agreements' incorporation of the JAMS arbitration rules also constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability.").

Mr. Reynolds does not respond to Defendants' arguments regarding the Parties' agreement to delegate the question of the arbitrability of his claims to the arbitrator. Instead, he argues that this case cannot be submitted to arbitration because it involves a claim for "public injunctive relief" under the WCPA, which, he asserts, excludes this case from arbitration. Dkt. No. 26 at 12 (quoting Terms of Use at 11); *see* Dkt. No. 19 ¶¶ 8.1–8.4 (seeking to enjoin Safeway and Albertson's from "making representations similar to those at issue in this ca[s]e"). He also argues that his claims are not subject to arbitration because they relate to Defendants' allegedly "dishonest representations" in their online

ordering process rather than a controversy or dispute regarding the Terms of Use. Dkt. No. 26 at 15. But whether Mr. Reynolds's claim for an injunction under the WCPA is an excluded request for "public injunctive relief" and whether his remaining claims are within the scope of the parties' agreement to arbitrate are exactly the types of questions that the Parties have delegated to the arbitrator to decide. The Court concludes that the Terms of Use clearly and unmistakably delegate arbitrability questions to the arbitrator and, as a result, the arbitrator must determine which, if any, of Mr. Reynolds's claims are subject to arbitration. *See Brennan*, 796 F.3d at 1130. The Court GRANTS Defendants' motion to compel arbitration.

Defendants ask the court to dismiss this action if it grants their motion to compel arbitration. Dkt. No. 24 at 17. Mr. Reynolds does not address whether the case should be dismissed or stayed. The FAA directs courts to "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Notwithstanding this language, the Ninth Circuit has held that a district court may dismiss the action if it determines that all claims raised in the action are subject to arbitration. *See Johnmohammadi v. Bloomingdale's*, *Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014); *see also Forrest v. Spizzirri*, slip op. at 7–9 (9th Cir. Mar. 16, 2023) (finding that recent Supreme Court case law does not abrogate this prior holding of the Ninth Circuit).

Because the Parties have delegated the determination of whether Mr. Reynolds's claims are subject to arbitration to the arbitrator, rather than to the Court, the Court will STAY this action so that Mr. Reynolds has a forum in which to pursue his claims if the

arbitrator decides that they are not arbitrable. Accordingly, the Court DENIES Defendants' request to dismiss this action.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to compel arbitration (Dkt. No. 24); ORDERS the parties to proceed with arbitration in accordance with the Terms of Use; and STAYS this action pending the completion of arbitration.

The court further ORDERS the Parties to file a joint status report no more than **ninety (90) days** from the date of this Order and **every ninety (90) days** thereafter until the court lifts the stay. The joint status reports shall inform the Court of the status of Mr. Reynolds's claims against Defendants. If Mr. Reynolds's claims are resolved or if there is any other significant change in the status of this matter, the court ORDERS the Parties to file a joint status report informing the Court of the development no more than **seven (7) days** after it occurs. The stay will remain in effect until the court orders otherwise.

Dated this 17th day of March, 2023.

Tana Lin
United States District Judge