UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SETH REYNOLDS,<br><br>              Plaintiff,<br>    v.<br><br>SAFEWAY INC; and ALBERTSON'S LLC; and ALBERTSONS COMPANIES INC.,<br><br>              Defendants. | CASE NO. 2:22-cv-00197-TL<br><br>ORDER ON MOTION TO MODIFY OR VACATE ARBITRATION AWARD |

This matter is before the Court on Plaintiff Seth Reynolds's Motion to Modify or Vacate Arbitration Award. Dkt. No. 40. Having reviewed the Parties' briefing and the relevant record, the Court DENIES Plaintiff's motion.

I.    BACKGROUND

This case is a proposed class action arising from Mr. Reynolds's allegations that Safeway and Albertson's made deceptive representations on their online ordering system and, as a result,

ORDER ON MOTION TO MODIFY OR VACATE ARBITRATION AWARD - 1

overcharged him and others when they ordered groceries for home delivery through that system. Dkt. No. 19.

Mr. Reynolds alleges that he made an online purchase of three Signature Farms Boneless Skinless Chicken Breasts Value Packs – 4 lbs at a price of $11.96 each, or $2.99 per pound, through Safeway's online grocery delivery service. Dkt. No. 19 ¶¶ 2.3–2.4. Mr. Reynolds alleges that he received two chicken packs and was charged $16.16 for each pack, or $4.49 per pound, and so was overcharged $12.80 in violation of an alleged policy that customers "will pay the prices, fees, and other charges, and receive the promotions, offers, discounts, and savings applicable to your order at the time of online checkout, regardless of the date of scheduled delivery/pickup." *Id.* ¶¶ 2.2, 2.5–2.14.

Mr. Reynolds further alleges that Safeway and Albertson's use the same online ordering system and that every online order from these stores' Washington and national locations displayed the language that he alleges Safeway violated. Dkt. No. 19 ¶¶ 2.16–2.18. As a result, Mr. Reynolds alleges, if only one person at each of Defendants' stores nationwide was deceived by this language each day, Defendants would have defrauded its customers by about $43 million over a four year period. *Id.* ¶ 2.23.

Mr. Reynolds filed the instant action in the Superior Court of Washington for King County in January 2022. *See* Dkt. No. 1. Defendants removed the action to federal court. *Id.* Following removal, this Court determined that the Parties had entered into a valid agreement to arbitrate, as well as to delegate the threshold question of arbitrability to the arbitrator. Dkt. No. 31. The Court ordered the Parties to proceed with arbitration in March 2023. *Id.*

The Parties arbitrated their claims before the Honorable Ronald E. Cox (ret.), who determined that Mr. Reynolds's claims were subject to arbitration and ultimately dismissed all of

Mr. Reynolds's claims. *See* Dkt. No. 39 at 1–2. Mr. Reynolds has moved to vacate or, in the alternative, modify, the arbitration award. Dkt. No. 40.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S 576, 582 (2008). If a party seeks to confirm an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected" as prescribed by the FAA. 9 U.S.C. § 9.

The United States Supreme Court reads the provisions of the FAA as "substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assocs., L.L.C.*, 552 U.S. at 588. In turn, the Ninth Circuit has cautioned that "[d]eference is the rule; rare indeed is the exception." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1209 (9th Cir. 1989); *see also MultiCare Health Sys. v. Wash. State Nurses Ass'n*, 743 F. App'x 757, 759 (9th Cir. 2018) (same).

**A.    Vacatur of an Arbitration Award**

Under the FAA, a court may vacate an award only on the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceed their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "Arbitrators exceed their powers when they express a 'manifest disregard of law,' or when they issue an award that is 'completely irrational.'" *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (quoting *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009)).

"Although the words 'manifest disregard for law' do not appear in the FAA, they have come to serve as a judicial gloss on the standard for vacatur set forth in FAA § 10(a)(4)." *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 414 (9th Cir. 2011) (first citing *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc); then citing *Bosack*, 586 F.3d at 1104). "The manifest disregard exception requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (quoting *San Martine Compania De Navegacion*, 293 F.2d 796, 801 (9th Cir. 1961)). "[T]he moving party must show that the arbitrator 'underst[ood] and correctly state[d] the law, but proceed[ed] to disregard the same." *Id.* (alterations in original) (quoting *San Martine Compania De Navegacion*, 293 F.2d at 801). "[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack*, 586 F.3d at 1104 (alteration in original) (quoting *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004)).

"Courts may also vacate awards that are 'completely irrational . . . with respect to the contract.'" *Johnson*, 635 F.3d at 414 n.10 (quoting *Bosack*, 586 F.3d at 1107). This is "another, separate gloss on the standard set forth in FAA § 10(a)(4)." *Id.* (citing *Kyocera*, 341 F.3d at 997). This standard "is extremely narrow and is satisfied *only* 'where [the arbitration decision] fails to

draw its essence from the agreement.'" *Comedy Club*, 553 F.3d at 1288 (alteration in original) (emphasis added) (quoting *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461–62 (8th Cir. 2001)).

Finally, independent of the FAA, a court may vacate an award as unenforceable on public policy grounds if it finds (1) "an explicit, well defined and dominant policy exists" and (2) "the policy is one that specifically militates against the relief ordered by the arbitrator." *Aramark Facility Servs. v. Serv. Emps. Int'l Union, Loc. 1877, AFL CIO*, 530 F.3d 817, 823 (9th Cir. 2008) (quoting *United Food & Com. Workers Int'l Union, Loc. 588 v. Foster Poultry Farms*, 74 F.3d 169, 174 (9th Cir. 1995)). The relevant policy must be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (quoting *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983) (internal quotation marks omitted)). Further, the Ninth Circuit stresses that "'courts should be reluctant to vacate arbitral awards on public policy grounds,' because '[t]he finality of arbitral awards must be preserved if arbitration is to remain a desirable alternative to courtroom litigation.'" *Aramark Facility Servs.*, 530 F.3d at 823 (quoting *Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir. 1995)).

**B.    Modification of an Arbitration Award**

Under the FAA, modification of an arbitration award is appropriate in three enumerated instances:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

        (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. In any of these cases, modification and correction of the award "so as to effect the intent thereof and promote justice between the parties" is appropriate. *Id.*

While Plaintiff's motion is titled a motion to motion to modify or vacate, none of the arguments raised implicate any of the enumerated grounds for a modification of the arbitration award. *See generally* Dkt. No. 40.

### III.    DISCUSSION

**A.**    **The FAA's Statutory Grounds for Judicial Review of Awards Are Exclusive**

Mr. Reynolds argues that during arbitration of his case, the Arbitrator made two errors of law that warrant vacatur or modification of the final award. Dkt. No. 40 ¶ 2.2. Mr. Reynolds contends that because the Terms of Use ("TOU") state that "the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so" (Dkt. No. 40-2 at 12), this Court has the authority to review the Arbitrator's legal holdings *de novo*. *See* Dkt. No. 40 ¶ 3.1.

This Court has already determined that the FAA governs the TOU in this case. *See* Dkt. No. 31 at 6. While Mr. Reynolds argues that the Parties contracted around the FAA's statutory grounds for vacatur or modification, the statutory grounds for judicial review of arbitration awards under the FAA are exclusive. *Hall Street Assocs., L.L.C.*, 552 U.S. at 590 (holding that "§§ 10 and 11 provide exclusive regimes for the review provided by the [FAA]"). In particular, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 662 (9th Cir. 2012) (quoting *Bosack*, 586 F.3d at 1102); *see also Kyocera*, 341 F.3d at 994 ("The [FAA], 9 U.S.C. §§ 1–16, enumerates limited grounds on which a federal court may vacate,

modify, or correct an arbitral award. Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard."). This is true even in cases where, as here, the Parties have contracted to expand the grounds on which a court may vacate, modify, or correct an arbitration award. *See, e.g.*, *Hall St. Assocs., L.L.C.*, 552 U.S. at 579 (holding that contractual supplementation of grounds for vacatur or modification of arbitration award under the FAA to permit vacatur or modification "where the arbitrator's conclusions of law are erroneous" was impermissible); *Kyocera*, 341 F.3d at 994 (holding that FAA provided exclusive grounds for vacatur or modification of arbitration award even where arbitration agreement permitted the court to vacate or modify award "where the arbitrators' conclusions of law are erroneous").

Mr. Reynolds's reliance on cases such as *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1989), and *Kansas v. Nebraska*, 574 U.S. 445 (2015), are misplaced (*see* Dkt. No. 40 at 7; Dkt. No. 43 at 10) because, as this Court already decided (Dkt. No. 31 at 6), the FAA governs the arbitration agreement in this case. *Volt Information Sciences* addressed the question of whether the FAA preempted application of the California Arbitration Act's provision permitting a court to stay arbitration pending resolution of related litigation in a case where the parties had agreed that their arbitration agreement would be governed by the law of California. *See* 489 U.S. at 470. As *Volt Information Sciences* and subsequent caselaw have made clear, parties are free to contemplate enforcement of their arbitration agreements under authorities other than the FAA—such as, for example, state statutory or common law—that provide for a different scope of judicial review. *Id.*; *see also Hall St. Assocs., L.L.C.*, 552 U.S. at 590. Here, Mr. Reynolds bases his argument on the TOU clause, "the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so." Dkt. No. 40 at 8. However, for the reasons discussed in the preceding

paragraph and based on cases decided after *Volt Information Sciences, Inc.*, the Supreme Court's decision in *Volt Information Sciences* is inapposite to the facts presented here.

Similarly, Mr. Reynolds's reliance on *Kansas* fails. In that case, the parties brought their disputes to *non-binding arbitration* in accordance with a dispute resolution provision in a settlement agreement. 574 U.S. at 452. The only support Mr. Reynolds provides for his claim that the arbitration in his case was non-binding is the TOU clause "the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so." Dkt. No. 40 at 8. Again, this argument fails.

Mr. Reynolds also states that his brief never referenced 9 U.S.C. §§ 10 or 11. Dkt. No. 43 at 10. However, Mr. Reynolds cannot avoid the requirements of the FAA simply by not citing relevant sections of the statute in his briefing. Whether he cited the provisions or not, they are applicable.[1] The Supreme Court reads "the three provisions, §§ 9–11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assocs., L.L.C.*, 552 U.S. at 588. Neither of Mr. Reynolds's arguments of legal error on the Arbitrator's part—specifically, the Arbitrator's holdings that *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), preempted state precedent invalidating arbitration agreements on the basis of anti-representation clauses and that there was no violation of RCW 19.86.020—indicate fraud or corruption on the part of the arbitrator or in procurement of the award, misconduct on the part of the arbitrator, or an expression of a manifest disregard of the law. Further, neither argument indicates a material mistake in the calculation of the award, that the award was based upon a matter not submitted to the Arbitrator, or that the award is imperfect in some other way.

---

[1] 9 U.S.C. § 9 specifically references Sections 10 and 11. Further, Sections 10 and 11 are titled "Same; vacation; grounds; rehearing" and "Same; modification or correction; grounds; order."

The Court finds that Mr. Reynolds has not made any showing that circumstances warranting vacatur or modification of the final award exist in this case.

**B.      No Public Policy Grounds to Vacate the Award Exist Here**

Mr. Reynolds also argues that Washington state public policy considerations warrant vacatur or modification of the award. *See* Dkt. No. 40 at 12–17. Mr. Reynolds contends that Washington's "strong policy allowing representative CPA claims" invalidates the TOU in this case, because the TOU limits Washingtonians' ability to bring representative CPA claims to protect the public interest. *Id.* at 13.

Primarily relying on *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), Mr. Reynolds argues that although the right to a class action is waivable, his claims for injunctive relief and qui tam were not waived through the TOU.[2] Dkt. No. 40 ¶ 5.10. *Viking River Cruises* addressed the question of whether the FAA preempted a rule of California law that invalidated contractual waivers of the right to assert representative claims under California's labor code. 596 U.S. at 643. While Mr. Reynolds is correct that the *Viking River Cruises* Court noted that it had "never held that the FAA imposes a duty on States to render all forms of representative standing waivable by contract," *Viking River Cruises* does not stand for the proposition that Washington law forecloses a contractual waiver of the right to assert a representative claim. *Id.* at 657; *see generally id.* Nor has Mr. Reynolds presented any authority indicating such a foreclosure.[3] *See* Dkt. Nos. 40, 43.

To the extent that Mr. Reynolds argues that this Court should determine that an arbitration agreement that waives a right to assert representative claims is unconscionable, that

---

[2] Mr. Reynolds did not assert any qui tam claim for relief. *See generally* Dkt. No. 19.

[3] The primary authority that Mr. Reynolds points to on this issue, *Scott v. Cingular Wireless*, 160 Wn.2d 843, 161 P.3d 1000 (2007), was overruled by the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

argument has been foreclosed by the Ninth Circuit. In *Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012), the Ninth Circuit held that the FAA preempts Washington state law invalidating class-action waivers.

## IV.   CONCLUSION

For the reasons stated in this Order, the Court DENIES Plaintiff's Motion to Modify or Vacate Arbitration Award (Dkt. No. 40) and DIRECTS the Clerk of the Court to close this action.

Dated this 10th day of April 2024.

Tana Lin
United States District Judge